**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICAN CENTER FOR LAW AND JUSTICE, | ) ) ) | |
| 201 Maryland Avenue, NE Washington, DC 20002 Plaintiff, | ) ) ) ) | |
| vs. | ) ) | Case Action No. |
| UNITED STATES DEPARTMENT OF STATE, | ) ) ) | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| The Executive Office Office of the Legal Adviser, Suite 5.600 600 19th Street NW Washington DC 20522 | ) ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff American Center for Law and Justice ("ACLJ"), by and through counsel, brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et. seq.*, challenging the failure of Defendant, the United States Department of State ("DOS"), to respond to Plaintiff's FOIA request within the statutorily prescribed time period, and seeking the disclosure and release of agency records improperly withheld by Defendant. In support thereof, Plaintiff alleges and states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 552(a)(6)(C)(i), and 28 U.S.C. § 1331, because this action arises under FOIA, and Plaintiff has exhausted its administrative remedies.

2.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

3.      This Court has authority to award injunctive relief pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 2202.

4.      This Court has authority to award declaratory relief pursuant to 28 U.S.C. § 2201.

<u>PARTIES</u>

5.      Plaintiff, with offices at 201 Maryland Avenue, N.E., Washington, DC 20002, is a not-for-profit 501(c)(3) organization dedicated to the defense of constitutional liberties secured by law.  Plaintiff's mission is to educate, promulgate, conciliate, and where necessary, litigate, to ensure that those rights are protected under the law. Plaintiff also regularly monitors governmental activity with respect to governmental accountability. Plaintiff seeks to promote integrity, transparency, and accountability in government and fidelity to the rule of law. In furtherance of its dedication to the rule of law and public interest mission, Plaintiff regularly requests access to the public records of federal, state, and local government agencies, entities, and offices, and disseminates its findings to the public.

6.      Defendant is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1) and is headquartered at 2201 C Street, N.W., Washington, DC 20520. Defendant is in control and possession of the records sought by Plaintiff.

<u>FACTUAL ALLEGATIONS</u>

7.      On Monday, May 9, 2016, Fox News chief Washington correspondent James Rosen ("Rosen"), reported that Defendant edited, deleted, altered or otherwise manipulated the video of its Daily Press Briefing – Dec. 2, 2013. Brett T., *Gone in a Flash: James Rosen Reports His Iran Deal Question was Excised from Archives*, TWITCHY.COM (May 9, 2016, 9:08 pm),

http://twitchy.com/brettt-3136/2016/05/09/gone-in-a-flash-james-rosen-reports-his-iran-deal-question-was-excised-from-archives-video/. The edit removed approximately 8 minutes of video beginning at 26:56. The deleted portion contained a series of questions submitted by Rosen and DOS spokesperson Jen Psaki's ("Psaki") answers thereto.

8.     The deleted portion contained dialogue concerning what year the Obama Administration begin its direct secret bilateral talks with Iran culminating in the Joint Comprehensive Plan of Action ("JCPA"). At the Daily Press Briefing – Dec. 2, 2013, Rosen asked Psaki if the talks had begun in 2011, as Deputy National Security Adviser Ben Rhodes ("Rhodes") recently admitted to the New York Times. David Samuels, *The Aspiring Novelist Who Became Obama's Foreign-Policy Guru, New York Times*, NY TIMES (May 5, 2016), http://www.nytimes.com/2016/05/08/magazine/the-aspiring-novelist-who-became-obamas-foreign-policy-guru.html?_r=1. Rhodes also indicated to the New York Times that the White House identified the election of moderate Iranians to the government to justify its decision to begin talks *in 2013. Id.*

9.     Within the deleted, edited, altered or otherwise manipulated portion of the video, according to the Transcript of the Daily Press Briefing – Dec. 2, 2013, Rosen recited his dialogue with Psaki's predecessor, Victoria Nuland ("Nuland"), as follows:

> QUESTION: On the 6th of February in this room, I had a very brief exchange with your predecessor, Victoria Nuland —
>
> MS. PSAKI: Mm-hmm.
>
> QUESTION: — about Iran. And with your indulgence, I will read it in its entirety for the purpose of the record and so you can respond to it.
>
> > *"Rosen: There have been reports that intermittently, and outside of the formal P5+1 mechanisms, the Obama Administration, or members of it, have conducted direct secret bilateral talks with Iran. Is that true or false?"*

> *"Nuland: We have made clear, as the Vice President did at Munich, that in the context of the larger P5+1 framework, we would be prepared to talk to Iran bilaterally. But with regard to the kind of thing that you're talking about on a government-to-government level, no."*

That's the entirety of the exchange.

U.S. Dep't of State, Daily Press Briefing – Dec. 2, 2013, http://www.state.gov/r/pa/prs/dpb/2013/12/218178.htm#IRAN.

Rosen continued:

> As we now know, senior state department officials had, in fact, been conducting direct, secret bilateral talks with senior officials of the Iranian Government in Oman, perhaps dating back to 2011 by that point.
>
> So the question today is a simple one: When the briefer was asked about those talks and flatly denied them from the podium, that was untrue, correct?
>
> MS. PSAKI: I mean, James, I – that – you're talking about a February briefing, so 10 months ago. I don't think we've outlined or confirmed contacts or specifics beyond a March meeting. I'm not going to confirm others beyond that at this point. So I don't know that I have any more for you.
>
> QUESTION: Do you stand by the accuracy of what Ms. Nuland told me, that there had been no government-to-government contacts, no secret direct bilateral talks with Iran as of the date of that briefing, February 6th? Do you stand by the accuracy of that?
>
> MS. PSAKI: James, I have no new information for you today on the timing of when there were any discussions with any Iranian officials.
>
> QUESTION: Let me try it one last way, Jen —
>
> MS. PSAKI: Okay.
>
> QUESTION: — and I appreciate your indulgence.
>
> MS. PSAKI: Sure.
>
> QUESTION: Is it the policy of the State Department, where the preservation or the secrecy of secret negotiations is concerned, to lie in order to achieve that goal?
>
> MS. PSAKI: James, I think there are times where diplomacy needs privacy in order to progress. This is a good example of that. Obviously, we have made clear and laid out a number of details in recent weeks about discussions and about a

bilateral channel that fed into the P5+1 negotiations, and we've answered questions on it, we've confirmed details. We're happy to continue to do that, but clearly, this was an important component leading up to the agreement that was reached a week ago.

QUESTION: Since you, standing at that podium last week, did confirm that there were such talks, at least as far back as March of this year, I don't see what would prohibit you from addressing directly this question: Were there secret direct bilateral talks between the United States and Iranian officials in 2011?

MS. PSAKI: I don't have anything more for you today. We've long had ways to speak with the Iranians through a range of channels, some of which you talked – you mentioned, but I don't have any other specifics for you today.

QUESTION: One more on Iran?

QUESTION: The Los Angeles Times and Politico have reported that those talks were held as far back as 2011. Were those reports inaccurate?

MS. PSAKI: I'm not sure which reports you're talking about. Are you talking about visits that the Secretary and others made to Oman, or are you talking about other reports?

QUESTION: I'm talking about U.S. officials meeting directly and secretly with Iranian officials in Oman as far back as 2011. The Los Angeles Times and Politico have reported those meetings. Were those reports inaccurate?

MS. PSAKI: I have nothing more for you on it, James, today.

*Id.*

10.     Additional deleted, edited, altered or otherwise manipulated video footage contained

dialogue between Psaki and members of the press regarding the efficacy of sanctions on Iran and

Iran's progress in developing nuclear weapon capabilities. A portion of that omitted dialogue is

as follows:

QUESTION: — Secretary Kerry, when he did his round robin of interviews after the announcement of the deal in Geneva, more than once stated that when Iran had reached out to the Bush-Cheney Administration in 2003, Iran was only in possession of 164 centrifuges. Now, he would go on to say, they have 19,000, and this therefore represents the best possible deal that could be secured.

Isn't it a fact that since the Obama-Biden Administration took office, 70 percent of Iran's centrifuges have been installed?

MS. PSAKI: Well, I'd have to look at the statistics, James, but we have not questioned the fact that Iran has made progress on enrichment and on developing a nuclear weapon. We have not questioned that. That's one of the reasons why we stepped up sanctions over the past couple of years. The President and Secretary Kerry were big proponents of that. We worked with the international community to do just that to put that necessary pressure in place.

*Id.*

11.   According to news reports, Psaki's responses to Rosen's questions deleted from the video are statements where she "acknowledges misleading the press on the Iran negotiations." *State Dept. Faces Questions Over Missing Tape, Amid Scramble Over WH Aide's Iran Boast*, FOX NEWS (May 10, 2016), http://www.foxnews.com/politics/2016/05/10/state-dept-faces-questions-over-missing-tape-amid-scramble-over-wh-aides-iran-boast.html.   The   significance   of   the apparent deception, and more importantly for purposes of Plaintiff's FOIA request, the deletion of Defendant's video footage where that apparent deception is acknowledged, is magnified in light of Rhodes' admissions to the New York Times.

12.   According to Fox News: "That Psaki exchange, however, was missing from the department's official website and its YouTube channel. The department now says it cannot explain the deletion and is working to restore the material." *Id.* However, as of May 10, 2016, 4:21 pm, what appeared to be the full, unedited video appeared on Defendant's website. U.S. Dep't   of   State,   Daily   Press   Briefing:   December   2,   2013, http://video.state.gov/en/video/2886914568001 (last viewed May 10, 2016, 2:44pm). Yet, the edited version, as of May 10, 2016, 4:21 pm, still remained on Defendant's YouTube channel. U.S.   Dep't   of   State,   Daily   Press   Briefing:   December   2,   2013,   YouTube, https://www.youtube.com/watch?v=zMSVRmM7_DM (last viewed May 10, 2016, 2:44pm).

13.     After a spokesperson of Defendant initially claimed the deletion or alteration at issue was "a glitch," and after Defendant's receipt of Plaintiff's FOIA request, a different spokesperson of Defendant conceded it was a "deliberate step to excise the video" — and not a "glitch." Carol Morello, *It Wasn't a 'Glitch': State Department Deliberately Cut Embarrassing Questions From Press Briefing Video*, WASH. POST (June 1, 2016), https://www.washingtonpost.com/world/national-security/it-wasnt-a-glitch-state-department-deliberately-cut-embarrassing-questions-from-press-briefing-video/2016/06/01/68ab3664-2837-11e6-b989-4e5479715b54_story.html.

14.     On May 12, 2016, Plaintiff sent a FOIA request, attached hereto as Exhibit A and incorporated by reference as if fully set forth herein,[1] to Defendant seeking the following records within the twenty (20) working days requirement of the FOIA statute:

> 1.     All records reflecting the names or identity of any and all State Department officials, their staffs, any person conducting the meeting or briefing, or any other persons present at any meeting or briefing at which any State Department official or their staff discussed the content of the video recording of the Daily Press Briefing – Dec. 2, 2013, that was deleted, edited, altered or otherwise manipulated.

> 2.     All records reflecting the dates, times, and locations of any meeting or briefing at which any State Department official, their staff, or any other person, discussed the content of the portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, that was deleted, edited, altered or otherwise manipulated.

> 3.     All records that were used, referenced or discussed during any meeting or briefing at which any State Department official, their staff, or any other person discussed the content of the portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, that was deleted, edited, altered or otherwise manipulated.

[1] For purposes of minimizing unnecessary attachments to filings, and consistent with LCvR 5.1(e), Plaintiff has omitted from the attached Exhibit A the Memorandum in Support of Requested Fee Waiver and Expedited Processing, as well as the appendices accompanying the FOIA request Plaintiff sent to Defendant, which consists of transcripts and news reports cited in the FOIA request.

4.     All records that were provided by any State Department official, their staff, or any other person, to any other State Department official, their staff, or any other person before, during, or after any meeting or briefing at which any person discussed the content of the portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, that was deleted, edited, altered or otherwise manipulated.

5.     All records that were prepared by or for any person for any meeting or briefing, whether before, during or after such meeting or briefing, at which any State Department official, their staff, or any other person discussed the content of the portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, that was deleted, edited, altered or otherwise manipulated.

6.     All records containing any discussion or information regarding the rationale or explanation of *why* any portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, should be deleted, edited, altered or otherwise manipulated.

7.     All records containing any discussion of whether any portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, could be deleted, edited, altered or otherwise manipulated.

8.     All records containing any discussion that any portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, should be deleted, edited, altered or otherwise manipulated.

9.     All records containing any discussion that any portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, would be deleted, edited, altered or otherwise manipulated.

10.     All records containing any discussion that any portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, was deleted, edited, altered or otherwise manipulated.

11.     All records containing any discussion of the decision that any portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, should be deleted, edited, altered or otherwise manipulated.

12.     All records containing any discussion, instruction, direction, order, command, or suggestion that any portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, be deleted, edited, altered or otherwise manipulated.

13.     All records indicating the methodologies used to delete, edit, alter or otherwise manipulate any portion of the video recording of the Daily Press Briefing – Dec. 2, 2013.

14.    All records containing any discussion of why any portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, should not be deleted, edited, altered or otherwise manipulated.

15.    All records that relate to any questions, objections, disagreement, feedback, or guidance offered by attendees of any meeting or participants in any briefing regarding the question of whether any portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, should be deleted, edited, altered or otherwise manipulated.

16.    All records that relate to the restoration to the State Department website of the full unedited, unaltered version of the video recording of the Daily Press Briefing – Dec. 2, 2013, as well as the placement of a text box stating "Full video and transcript can be found on video.state.gov" at approximately the 26:57 mark of the official video record of the Daily Press Briefing – Dec. 2, 2013, posted on the State Department's YouTube channel.

17.    All records that were provided by any State Department official, their staff, agent or other representative to any other person who was not a State Department employee or appointee regarding whether any portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, should be deleted, edited, altered or otherwise manipulated.

18.    All records that were provided by any State Department official, their staff, agent or other representative to any other person who was not a State Department employee or appointee regarding whether any portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, would be or was deleted, edited, altered or otherwise manipulated.

19.    All records that were received by any State Department official, their staff, agent or other representative from any other person who was not a State Department employee or appointee regarding whether any portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, should be deleted, edited, altered or otherwise manipulated.

20.    All records that were received by any State Department official, their staff, agent or other representative from any other person who was not a State Department employee or appointee regarding whether any portion of the video recording of the Daily Press Briefing – Dec. 2, 2013, would be or was deleted, edited, altered or otherwise manipulated.

21.    All records that were provided by any State Department official, their staff, agent or other representative to any other person who was not a State Department employee or appointee regarding the restoration to the State Department website of the full unedited, unaltered video recording of the Daily

Press Briefing – Dec. 2, 2013, as well as the placement of a text box stating "Full video and transcript can be found on video.state.gov" at approximately the 26:57 mark of the official video record of the Daily Press Briefing – Dec. 2, 2013, posted on the State Department's YouTube channel.

22.     All records that were received by any State Department official, their staff, agent or other representative from any other person who was not a State Department employee or appointee regarding the restoration to the State Department website of the full unedited, unaltered video recording of the Daily Press Briefing – Dec. 2, 2013, as well as the placement of a text box stating "Full video and transcript can be found on video.state.gov" at approximately the 26:57 mark of the official video record of the Daily Press Briefing – Dec. 2, 2013, posted on the State Department's YouTube channel.

23.     All records not otherwise responsive to any Request enunciated herein that contain any discussion of the deleted, edited, altered or otherwise manipulated portion of the Daily Press Briefing – Dec. 2, 2013 video record.

24.     On September 9, 2013, the National Archives issued NARA Bulletin 2013-03 to the heads of all federal agencies regarding the duty to preserve federal records. In particular, paragraph 9 of that Bulletin states:

What does an agency do if there is an unauthorized removal of records? □If an agency knows of any actual or potential threat to records (e.g., removal, alteration, or destruction), it must contact NARA as required by 44 U.S.C. 2905 & 3106 and 36 CFR 1230.14. NARA will assist the agency in the recovery of any unlawfully removed records, including contacting the Attorney General, if necessary. It is also important to follow all agency internal reporting requirements, which may include reporting the threat to the agency's legal counsel and to its Inspector General.

As to that Bulletin, please provide:

        (A)     Any record that contains any discussion of that Bulletin on or after December 2, 2013, regarding the Daily Press Briefing – Dec. 2, 2013 video record.
        (B)     Any record that contains any reference to formulating a decision or agency action in response to that Bulletin which record also refers to the Daily Press Briefing – Dec. 2, 2013 video record.

25.     Any record that, in whole or in part, makes any reference to any particular question Rosen asked Psaki during the Daily Press Briefing – Dec. 2, 2013, and in particular this question: "Is it the policy of the State Department, where the preservation or the secrecy of secret negotiations is concerned, to lie in order to achieve that goal?"

26.     Any record that, in whole or in part, makes any reference to Psaki's response to the particular question asked by Rosen, identified in the request #25 above, during the Daily Press Briefing – Dec. 2, 2013, where Psaki replied, in part: "James, I think there are times where diplomacy needs privacy in order to progress. This is a good example of that . . . ."

27.     As multiple news sources have reported, on May 10, 2016, U.S. State Department spokesperson Elizabeth Trudeau, Director, Press Office ("Trudeau"), claimed the deletion of a portion of the Daily Press Briefing – Dec. 2, 2013, video "was a glitch" and again that "[g]enuinely we think it was a glitch." [citing U.S. State Dep't, Daily Press Briefing – May 10, 2016, http://www.state.gov/r/pa/prs/dpb/2016/05/257074.htm#IRAN (last visited May 11, 2016)].  This Request seeks all records that support or contradict Trudeau's assertion that the deletion was a glitch, or that were created, reviewed, sent, received or shared with any person by any State Department official in connection with Trudeau's assertion that said deletion was a glitch.

28.     On May 10, 2016, the following dialogue occurred between Trudeau and a member of the press:

> QUESTION:   I know, but can you – is anyone looking into why?
> MS TRUDEAU: So we are. We're looking into it. . . . [citing U.S. State Dep't, Daily Press Briefing – May 10, 2016, http://www.state.gov/r/pa/prs/dpb/2016/05/257074.htm#IRAN (last visited May 11, 2016)].

This Request seeks all records created, reviewed, sent, received, or shared by any State Department official, their staffs, or any other person in regards to any efforts made or steps taken to "look[] into it" as Trudeau asserted.

29.     All records containing any discussion or information regarding or otherwise reflecting State Department policy, procedures, guidelines, directives or instructions concerning the filming, creation, production, editing, altering, posting, or maintenance of Daily Press Briefing video records on www.state.gov and on the State Department YouTube channel.

30.     At the Daily Press Briefing – May 10, 2016, speaking of the altered video, Trudeau said: "There was a missing portion of it. We pulled it from another online source."

This request seeks all records containing any discussion or information supporting and contradicting Trudeau's assertion that the video record was replaced with video "pulled [] from another online source," *as well as why it was necessary* to "pull[] it from another online source."

31.     At the Daily Press Briefing – May 10, 2016, Trudeau said: "When Fox flagged it for us, we actually replaced it with a video from DVIDS, which is the military repository where a lot of news media gets its video."

This request seeks all records created, reviewed, sent, or received by any State Department official or their staff to any other agency or person requesting, acquiring, accessing or otherwise obtaining or attempting to obtain the full, unedited, unaltered video record of Daily Press Briefing – Dec. 2, 2013.

15.     Pursuant to State Department FOIA regulation 22 C.F.R. § 171.4(b), Plaintiff provided

detailed background information addressing "the subject, timeframe, names of any individuals

involved, a contract number (if applicable), and reasons why the requester believes the

Department may have records on the subject of the request."

16.     Plaintiff specified in its FOIA request that:

For purposes of this Request, the term "record" is "any information" that qualifies under 5 U.S.C. § 552(f), and includes, but is not limited to, the original or any full, complete and unedited copy of any log, chart, list, memorandum, note, correspondence, writing of any kind, policy, procedure, guideline, agenda, handout, report, transcript, set of minutes or notes, video, photo, audio recordings, or other material. The term "record" also includes, but is not limited to, all relevant information created, stored, received or delivered in any electronic or digital format, e.g., electronic mail, instant messaging or Facebook Messenger, iMessage, text messages or any other means of communication.

17.     Plaintiff specified in its FOIA request that:

For purposes of this Request, the term "briefing" includes, but is not limited to, any in-person meeting, teleconference, electronic communication, or other means of gathering or communicating by which information was conveyed to one or more person.

18.     Plaintiff specified in its FOIA request that:

For purposes of this Request, the term "State Department official" includes, but is not limited to, any person who is (1) employed by or on behalf of the U.S. State Department in any capacity; (2) contracted for services by or on behalf of the U.S. State Department in any capacity; or (3) appointed by the President of the United States to serve in any capacity at the U.S. State Department.

19.     Plaintiff specified in its FOIA request that:

**For purposes of this Request, the timeframe of records requested herein is December 1, 2013, to the date this Request is received.**

20.     In its FOIA request, Plaintiff stated:

As such, if this Request is denied in whole or in part, ACLJ asks that you support all denials by reference to specific FOIA exemptions. In addition, ACLJ asks you to release all severable portions of otherwise exempt material.

21.     In its FOIA request, Plaintiff stated:

Moreover, as explained in an accompanying memorandum, the ACLJ is entitled to expedited processing of this Request as well as a waiver of all fees associated with it. ACLJ reserves the right to appeal a decision to withhold any information sought by this request and/or to deny the separate application for expedited processing and waiver of fees.

22.     By letter dated May 18, 2016, attached hereto as Exhibit B and incorporated by reference as if fully set forth herein, Defendant acknowledged it received Plaintiff's FOIA request on May 13, 2016. Defendant advised it had assigned Case Control Number F-2016-0579.

23.     In its letter dated May 18, 2016, Defendant stated that it "will begin the processing of your request based upon the information provided in your communication." It did not include a date on which the IRS would provide an actual response to the request.

24.     In its letter dated May 18, 2016, Defendant stated:

Unusual circumstances (including the number and location of Department components involved in responding to your request, the volume of requested records, etc.) may arise that would require additional time to process your request.

25.     In its letter dated May 18, 2016, Defendant stated:

We will notify you as soon as responsive material has been retrieved and reviewed.

<u>Defendant's Approach to Records Sought and</u>
<u>History of Responding to FOIA Requests</u>

26.     Prior to receiving Plaintiff's FOIA request, Defendant officially described the deletion or alteration of its video record as a "glitch." *See* Complaint ¶13, *supra*. After receiving Plaintiff's FOIA request, Defendant changed its story and conceded the alteration was "deliberate." *Id.*

27.     After it received Plaintiff's FOIA request, Defendant publically announced on June 9, 2016, that it would not comply with requests from the House Oversight Committee for emails concerning the deleted or altered video, unilaterally deciding, apparently, that the emails it reviewed "aren't relevant."  Julian Hattem, *State Dept. Not Giving Emails to Congress in Probe Over Edited Video*, THE HILL (June 9, 2016, 2:56 pm), http://thehill.com/policy/national-security/282919-state-dept-not-giving-emails-to-congress-in-probe-over-edited-video.

28.     Recent news report highlighted a Department of Justice report which found that Defendant took 111 days on average to respond to FOIA requests in 2014, far longer than any other agency and the time specified by statute, and that only 10 percent of Defendant's FOIA officers took required training, the worst attendance record of any major agency. Kathryn Watson, *State Dept is the Slowest Fed Agency to Process FOIA Requests*, DAILY CALLER (May 9, 2016 2:53 pm), http://dailycaller.com/2016/05/09/state-dept-is-the-slowest-fed-agency-for-foia-responses/; *see also*, Sarah Westwood, *State Department Worst of All Agencies at Answering FOIAs, Study Shows*, WASH. EXAM. (Mar. 10, 2015 1:10 pm), http://www.washingtonexaminer.com/state-department-worst-of-all-agencies-at-answering-foias-study-shows/article/2561299 (relaying findings supporting Defendant's grade of "F" on Center for Effective Government's annual FOIA report card).

29.     Defendant's reputation concerning its response to FOIA requests is well known. *See* Andrew Desiderio, *Associated Press Scolds State Dept for Slow Document Production*, Mediaite

(Nov. 16, 2015, 4:31 pm), http://www.mediaite.com/online/associated-press-scolds-state-dept-for-slow-document-production/ (describing the Associated Press's harsh criticism of Defendant for slow response to Associated Press FOIA requests); AP, *Judge scolds State Department official for slow response to request for records from Clinton tenure*, FOX NEWS (Jul. 30, 2015), http://www.foxnews.com/politics/2015/07/30/judge-scolds-state-department-official-for-slow-response-to-records-request.html.

<u>**CAUSE OF ACTION**</u>

<u>**Violation of the Freedom of Information Act**</u>

30.     Plaintiff realleges and incorporates by reference paragraphs 1 through 29 of this Complaint as if fully stated herein.

31.     The federal FOIA establishes a 20-day deadline by which a federal agency must make and issue a decision regarding compliance with a request for records made pursuant to the statute. 5 U.S.C. § 552(a)(6)(A)(i).

32.     Pursuant to 5 U.S.C. § 552(a)(6)(A), Defendant was required to determine whether to comply to Plaintiff's request within twenty (20) days, excepting Saturdays, Sundays, and legal public holidays. Pursuant to this same provision, Defendant also was required to notify Plaintiff immediately of the determination, the reasons therefor, and the right to appeal any adverse determination to the head of the agency.

33.     Plaintiff sent its FOIA request to Defendant's Office of Information Programs and Services, the component of Defendant designated by Defendant to receive FOIA requests directed to Defendant, and Plaintiff's FOIA request was received by that component on May 13, 2016.

34.     Pursuant to 5 U.S.C. § 552(a)(6)(A), the 20-day period commenced on May 13, 2016. Excluding weekends and Memorial Day (May 30, 2016), Defendant was required to make its determination and provide Plaintiff with the requisite notifications by June 10, 2016.

35.     As of the date of this Complaint, Defendant has failed to notify Plaintiff of any determination about whether Defendant will comply with Plaintiff's FOIA request, the reasons for any such determination, or Plaintiff's right to appeal any adverse determination to the head of the agency (with the exception of Defendant's denial of Plaintiff's expedited processing request, which Defendant denied in its letter dated May 18, 2016, and as to which Defendant did notify Plaintiff of its appeal rights as to that specific denial).

36.     As of the date of this Complaint, Defendant has failed to produce any records responsive to the request, indicated when any responsive records will be produced, or demonstrated that responsive records are exempt from production.

37.     Defendant has not requested information from the Plaintiff that would toll the 20-day period as contemplated by 5 U.S.C. § 552(a)(6)(A)(i)(I).

38.     FOIA permits a federal agency, in unusual circumstances, to extend the 20-day response deadline for a period not to exceed ten (10) additional working days. 5 U.S.C. § 552(a)(6)(B).

39.     While Defendant, in its letter of May 18, 2016, did vaguely assert with boilerplate language that "unusual circumstances . . . may arise that would require additional time to process your request," Defendant did not assert that any unusual circumstances had actually arisen or identify "the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i). As such, Defendant has not implicated the tolling provision set forth in 5 U.S.C. § 552(a)(6)(B)(i).

40.     There are no "unusual circumstances" that justify Defendant's prolonged delay in responding to Plaintiff's lawful FOIA request.

41.     Plaintiff has a statutory right to have Defendant process Plaintiff's FOIA request in a timely manner and in accordance with the requirements set forth in 5 U.S.C. § 552(a)(6).

42.     Defendant is unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. § 552.

43.     FOIA provides a cause of action for a complainant from whom a federal agency has withheld requested records. 5 U.S.C. § 552(a)(4)(B).

44.     Through its continued delay in responding to Plaintiff's lawful request for records, and its improper withholding of such requested records, Defendant has failed to comply with FOIA's prescribed deadlines for responding to a request for records and has violated Plaintiff's statutory rights.

45.     Pursuant to 5 U.S.C. § 552(a)(6)(C), because Defendant failed to comply with the time limit set forth in 5 U.S.C. § 552(a)(6)(A), Plaintiff is deemed to have exhausted any and all administrative remedies with respect to its FOIA request.

46.     Plaintiff is being irreparably harmed by reason of Defendant's unlawful withholding of requested records, and Plaintiff will continue to be irreparably harmed unless Defendant is compelled to conform its conduct to the requirements of the law.

<u>PRAYER FOR RELIEF</u>

47.     WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendant, and provide Plaintiff with the following relief:

(a)     An Order that Defendant conduct a search for any and all responsive records to Plaintiff's FOIA request and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA request;

!                                    17

(b)     An Order that Defendant produce, by a date certain, any and all non-exempt records responsive to Plaintiff's FOIA request and a *Vaughn* index of any responsive records withheld under claim of exemption;

(c)     An Order enjoining Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA request;

(d)     A declaratory judgment that Defendant's actions violated Plaintiff's statutory rights under 5 U.S.C. § 552;

(e)     An Order awarding to Plaintiff its reasonable attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and,

(f)     An Order granting to Plaintiff all further relief to which Plaintiff may be entitled.


Dated: June 28, 2016.                    Respectfully submitted,

                                         THE AMERICAN CENTER FOR LAW AND JUSTICE


                                         _____
                                         JAY ALAN SEKULOW
                                           (D.C. Bar No. 496335)
                                           *COUNSEL OF RECORD*
                                         STUART J. ROTH (D.C. Bar No. 475937)
                                         COLBY M. MAY (D.C. Bar No. 394340)
                                         CRAIG L. PARSHALL*
                                         BENJAMIN P. SISNEY*
                                         201 Maryland Avenue, N.E.
                                         Washington, D.C.  20002
                                         Telephone: (202) 546-8890
                                         Email: sekulow@aclj.org
                                         *Counsel for Plaintiff*


_____
*Motion for Admission *Pro Hac Vice* pending.