## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN CENTER FOR LAW AND
JUSTICE,

        *Plaintiff*,

  v.

UNITED STATES DEPARTMENT OF
STATE,

        *Defendant*.

Civil Action No. 16-1355 (TJK)

## MEMORANDUM OPINION AND ORDER

This action, filed pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,
concerns records relating to a portion of a video of a press briefing held by the Department of
State ("State Department" or "State") that was edited to conceal it from the public. During the
briefing, held in December 2013, Fox News correspondent James Rosen asked State
Spokesperson Jennifer Psaki whether the Obama Administration had held secret direct bilateral
talks with Iran in 2011, and whether Psaki's predecessor had lied to him by denying that such
talks had occurred. During the exchange, Psaki implied that her predecessor had lied to Rosen.
That same day, the State Department uploaded a video of the briefing to its website. Nearly
three years later, in May 2016, Deputy National Security Advisor Ben Rhodes reportedly
admitted that secret talks with Iran *had* in fact occurred in 2011. And within days, Rosen
reported that State had omitted approximately eight minutes of the December 2013 briefing—
including Psaki's responses to his questions about the Administration's secret talks with Iran—
from the online version of the video, without explanation.

Plaintiff American Center for Law and Justice ("ACLJ") submitted a FOIA request to the
State Department for records relating to the portion of the video that was allegedly deleted or

otherwise manipulated.  On June 28, 2016, ACLJ filed the instant action to compel State to produce the relevant records.  The parties cross-moved for summary judgment, with their dispute focused on (1) whether State's redactions pursuant to the attorney-client, deliberative process, and presidential communications privileges under FOIA's Exemption 5 were proper, and (2) whether State withheld factual information in those documents that was reasonably segregable.  For the reasons explained below, the Court will grant in part and deny in part State's motion and deny ACLJ's cross-motion.  The Court will grant summary judgment for State, and deny summary judgment for ACLJ, with respect to two documents redacted for the attorney-client privilege and 14 documents redacted for the deliberative process privilege.  The Court will otherwise deny both the motions without prejudice and will give State the opportunity to provide further justification for redacting the remaining three documents at issue.

## I.    Factual and Procedural Background

According to the complaint, during the State Department's daily press briefing on December 2, 2013, Psaki discussed with Rosen whether the Obama Administration had held secret direct bilateral talks with Iran in 2011, and whether Psaki's predecessor had lied to Rosen about those talks.  ECF No. 1 ("Compl.") ¶¶ 7-10; ECF No. 2 ("Ans.") ¶¶ 7-10.  At one point, Rosen asked, "Is it the policy of the State Department, where the preservation or the secrecy of secret negotiations is concerned, to lie in order to achieve that goal?"  Compl. ¶ 9; Ans. ¶ 9.  Psaki replied, "I think there are times where diplomacy needs privacy in order to progress.  This is a good example of that."  Compl. ¶ 9; Ans. ¶ 9.  The State Department uploaded a video of the briefing to its website and YouTube channel the day it occurred.  Ans. ¶ 7.

Nearly three years later, in May 2016, Rhodes reportedly admitted that secret talks with Iran had in fact occurred in 2011.  Compl. ¶ 8.  Within days, Rosen reported that approximately

eight minutes of the video of the briefing—including Psaki's responses to his questions—had been omitted from the online video without explanation. *Id.* ¶ 7. On May 10, 2016, a State official addressed the omission during a press briefing, telling reporters that "we think it was a glitch." *Id.* ¶ 14. A few weeks later, though, State did an about-face. In a press briefing held on June 1, 2016, a State official admitted that the omission was not a "glitch," but rather the result of a "deliberate step to excise the video." *Id.* ¶ 13; Ans. ¶ 13.

On May 12, 2016, ACLJ submitted a FOIA request seeking records from the State Department relating to the portion of the video of the briefing that was "deleted, edited, altered or otherwise manipulated." Compl. ¶ 14. On May 18, 2016, State sent a letter to ACLJ indicating that it would begin processing the FOIA request. *Id.* ¶¶ 22-25.

On June 28, 2016, ACLJ filed the instant action to compel the State Department to produce the records. *Id.* From November 8, 2016, through February 1, 2017, State produced non-exempt, responsive records to ACLJ on a rolling basis. ECF No. 26 at 21-23 ("Def.'s SOF") ¶ 4. In March 2017, State explained to ACLJ that it had made certain withholdings pursuant to Exemptions 5 and 6 of FOIA. ECF No. 27-1. In April 2017, ACLJ informed State that it objected to the withholdings made under Exemption 5. ECF 26-1; ECF No. 27-2. On May 26, 2017, State completed its production of responsive documents to ACLJ; all told, its productions totaled 34 unredacted documents and 35 documents partially redacted for exempt material. Def.'s SOF ¶¶ 5-6.

That same day, the State Department moved for summary judgment on the ground that its redactions were proper under Exemption 5 because the withheld material was covered by the attorney-client, deliberative process, or presidential communications privileges. ECF No. 26 at 1-20 ("Def.'s Mot."). On June 23, 2017, ACLJ cross-moved for summary judgment, challenging

State's assertion of the latter two privileges as applied to 17 responsive documents, and claiming that State withheld factual information in those documents that was reasonably segregable. ECF No. 27 ("Pl.'s Cross-Mot."). ACLJ has not disputed the adequacy of State's search for responsive documents, nor has it challenged State's other withholdings. *Id.*

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). "[T]he vast majority of FOIA cases can be resolved on summary judgment . . . ." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Congress enacted FOIA in 1966 to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). "FOIA 'mandates that an agency disclose records on request, unless they fall within one of nine exemptions.'" *Elec. Privacy Info. Ctr. ("EPIC") v. DHS*, 777 F.3d 518, 522 (D.C. Cir. 2015) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011)). FOIA exemptions are "explicitly made exclusive and must be narrowly construed." *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 673 (D.C. Cir. 2016) (quoting *Milner*, 562 U.S. at 565).

"The agency bears the burden to establish the applicability of a claimed exemption to any records or portions of records it seeks to withhold." *Id.* "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with

reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). The agency cannot rely on "conclusory and generalized allegations of exemptions." *Morley*, 508 F.3d at 1115 (quoting *Founding Church of Scientology of Wash., D.C., Inc. v. NSA*, 610 F.2d 824, 830 (D.C. Cir. 1979)).

FOIA also requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). When considering an agency's withholdings, the court has an affirmative duty to ensure that this requirement is satisfied, even if it must do so *sua sponte*. *See Morley*, 508 F.3d at 1123.

## III. Analysis

The State Department has withheld material pursuant to FOIA's Exemption 5 in a total of 19 documents. That exemption protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). It "'incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant'—including the presidential communications privilege, the attorney-client privilege, the work product privilege, and the deliberative process privilege—and excludes these privileged documents from FOIA's reach." *Loving v. DOD,* 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 321 (D.C. Cir. 2006)). The Court will assess, in turn, whether State has properly asserted the attorney-client, deliberative process, and presidential communications privileges to justify its withholdings.

## A.    Attorney-Client Privilege

The attorney-client privilege applies to communications between a lawyer and a client, in which the attorney was "acting as a lawyer and the communication was made 'for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding,'" *In re Lindsey*, 158 F.3d 1263, 1268 (D.C. Cir. 1998) (internal quotation mark omitted) (quoting *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984)), and extends to information provided by the client to the attorney as well as advice given by the attorney, *see Brinton v. Dep't of State*, 636 F.2d 600, 605 (D.C. Cir. 1980). "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997).

State redacted material in two documents that it asserts reflects "communications from Department officials to Department attorneys for the purpose of obtaining legal advice." ECF No. 32-3 ("Am. *Vaughn* Index"), Entry 5.[1] ACLJ has not challenged State's assertion of this privilege, and State appears to have adequately justified it. Thus, the Court concludes that the privilege applies, and that State's withholdings related to these two documents are proper. *Cf. Augustus v. McHugh*, 870 F. Supp. 2d 167, 172 (D.D.C. 2012).

## B.    Deliberative Process Privilege

"The deliberative process privilege protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Loving*, 550 F.3d at 38 (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). "The purpose of the deliberative

---

[1] This document is the latest iteration of the State Department's *Vaughn* index, provided to the Court in conjunction with State's reply in support of its motion for summary judgment. An earlier version of the index, ECF No. 26-3, was attached to the motion itself.

process privilege is to ensure open communication between subordinates and superiors, prevent premature disclosure of policies before final adoption, and to avoid public confusion if grounds for policies that were not part of the final adopted agency policy happened to be exposed to the public." *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 59 (D.D.C. 2014) (quoting *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 10 (D.D.C. 2004)), *aff'd*, No. 15-5131, 2015 WL 9309920 (D.C. Cir. Dec. 4, 2015). It "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government." *Klamath Water*, 532 U.S. at 8-9 (citation omitted) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975)).

To assess whether the deliberative process privilege applies, two conditions must be met. The withheld material must be "both 'predecisional' and 'deliberative.'" *100Reporters LLC v. DOJ*, 248 F. Supp. 3d 115, 150 (D.D.C. 2017) (quoting *Access Reports v. DOJ*, 926 F.2d 1192, 1194 (D.C. Cir. 1991)). Material "is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petrol. Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). "Material is deliberative if it 'reflects the give-and-take of the consultative process.'" *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). In determining what is considered a "part of [this] give-and-take," the agency is afforded "considerable deference." *Competitive Enter. Inst. v. U.S. Dep't of Treasury*, 308 F. Supp. 3d 109, 117 (D.D.C. 2018) (quoting *Chem.*

*Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984)) (internal

quotation marks omitted).

While the D.C. Circuit does not appear to have addressed the application of the

deliberative process privilege to the formulation of an agency's public statements, judges in this

District have frequently held that it does apply in this context. The privilege has been found to

cover, for example, agency discussion regarding the appropriate response to media inquiries on a

particular issue. *See, e.g.*, *Comm. on Oversight & Gov't Reform, U.S. House of Rep. v. Lynch*,

156 F. Supp. 3d 101, 111-12 (D.D.C. 2016) (privilege covers deliberations about how to

respond to press inquiries regarding a law enforcement initiative); *Judicial Watch v. DHS*, 736 F.

Supp. 2d 202, 208 (D.D.C. 2010) (privilege covers documents "generated as part of a continuous

process of . . . how to respond to on-going inquiries from the press and Congress" regarding

controversy surrounding a government witness's entry into United States and grant of

immunity). The privilege has also been extended to talking points prepared for an agency

representative to comment on a particular issue. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of

Commerce*, 337 F. Supp. 2d 146, 174 (D.D.C. 2004) (privilege covers talking points about "how

to answer questions about the duties of two [Department of Commerce] employees"). The Court

agrees with others in this District that the deliberative process privilege applies to documents

generated in the crafting of an agency's public statements.

The State Department redacted 16 documents pursuant to the deliberative process

privilege. In support of these redactions, State has submitted an amended *Vaughn* index, and two

supporting affidavits from the State official charged with responding to FOIA requests. *See* Am.

*Vaughn* Index, Entries 1, 3-4, 6-10; ECF No. 26-2 ("Stein Decl.") ¶ 16; ECF No. 32-1 ("2d Stein

Decl.") ¶¶ 5-9. In addition, the parties have provided the Court with redacted versions of 14 of

the 16 documents. *See* ECF No. 27-3; ECF No. 32-4.[2] Based upon a review of the entire record, the Court finds that State has properly asserted the deliberative process privilege with respect to 14 of the 16 documents. With respect to the remaining two—documents C06206248 and C06189797—the Court does not have sufficient information to determine whether the privilege applies. The 16 documents fall into six categories, and are discussed in more detail below.

### 1. December 3, 2013 Emails Preparing for State's Daily Press Briefing

State redacted a December 3, 2013 email thread containing a discussion of press strategy on Iran-related topics in preparation for its press briefing held later that day. *See* Am. *Vaughn* Index, Entry 6 (citing C06197841). Psaki, who ran the briefing, was copied on the thread. *See* C06197841. Psaki's office, the Bureau of Public Affairs ("PA"), was ultimately "responsible for communicating timely and accurate information" to the media. Stein Decl. ¶ 16. According to State, the withheld material contains "deliberations about press strategy and points to be made on topics related to Iran" involving both State's Deputy Spokesperson Marie Harf and Rhodes. 2d Stein Decl. ¶ 8. This material is predecisional, in that the recommendations were sent prior to the press briefing. It is also deliberative because it contains recommendations that appear, in context, to be part of the "give-and-take of the consultative process" leading up to a press briefing. *Coastal States*, 617 F.2d at 866. State's assertion that these are recommendations, and not final decisions, is further confirmed by the fact that neither Harf nor Rhodes was clearly "senior" to Psaki—Harf was Psaki's subordinate in the PA, and Rhodes worked in a separate executive branch entity. *Access Reports v. DOJ*, 926 F.2d 1192, 1195 (D.C. Cir. 1991) ("A document from a junior to a senior is likely to reflect his or her own subjective opinions and will

---

[2] The 14 documents are located within these two exhibits. The State Department has stamped each document with a "document identifier" beginning with "C." Def.'s Mot. at 4 n.4. When referencing or citing to a particular document, the Court will use its document identifier.

clearly have no binding effect on the recipient."). Thus, the Court concludes that the redacted material in this document is covered by the deliberative process privilege.

### 2. May 9, 2016 Emails Discussing State's Response to Rosen's Inquiry

Before publishing his story on the edits to the video, Rosen reached out to State for comment. *See* C06206248 at 8. State redacted seven email threads containing discussions about how to respond to Rosen's inquiry. 2d Stein Decl. ¶ 6; *see also* Am. *Vaughn* Index, Entries 3, 4, 7. Rosen sent his inquiry at 5:10 p.m. on May 9, 2016 to Office of Press Relations Director Elizabeth Trudeau and others, stating that he expected a reply within the next 30 minutes. *See* C06201418. What ensued, State asserts, were "time-sensitive, back-and-forth discussions about how to respond" to Rosen. 2d Stein Decl. ¶ 6. At 6:01 p.m. that same day, Trudeau confirmed that she had spoken to Rosen. *See* C06206248 at 2.

With respect to six of these seven email threads, State has shown that the withheld material is both predecisional and deliberative. *See* C06224640; C06201418; C06197855; C06219552; C06193231; C06197857. First, the emails sent in these six threads were all sent *prior to* Trudeau's confirmation that she had spoken to Rosen, and thus were predecisional. Second, State asserts that the withheld material consists of "proposals, recommendations, opinions, and questions" to assist Trudeau, who was "ultimately responsible" for responding to Rosen. 2d Stein Decl. ¶ 6. This assertion is corroborated by the *Vaughn* index and the unredacted content of the documents themselves. In the first email thread, two State officials discussed the appropriate response to Rosen's inquiry. *See* Am. *Vaughn* Index, Entry 7; C06224640. In the second and third email threads, State officials asked each other for insight into this issue. *See* C06201418; C06197855. In the fourth email thread, a State official asked a National Security Council ("NSC") official for background information. *See* Am. *Vaughn* Index,

Entry 4; C06219552.  In the fifth and sixth email threads, a group of State officials discussed, and suggested revisions to, talking points on how to respond to Rosen's inquiry.  *See* Am. *Vaughn* Index, Entry 3; C06193231; C06197857.  Therefore, the Court finds that State has adequately established that the withheld material is deliberative, as it shows the "give-and-take of the consultative process" in crafting the appropriate response to Rosen's inquiry.  *Coastal States*, 617 F.2d at 866.  Because the redacted material in these six email threads is both predecisional and deliberative, the Court concludes that the deliberative process privilege applies to it.

The seventh email thread, document C06206248, contains a redacted email in which Trudeau confirmed to her colleagues that she had spoken to Rosen.  Emails both *prior to* and *after* this confirmation email are redacted.  *See* C06206248.  The Court cannot tell whether the privilege applies to the confirmation email, and the emails sent afterwards; obviously, these documents are not predecisional with respect to State's response to Rosen's inquiry.  It is possible that the privilege does apply here— if, for example, the emails contain discussions about a follow-up response to Rosen, or about how to handle press inquiries on this topic in general.  But State has not made this clear in its filings.  Thus, before making its privilege determination, the Court will allow State to provide further context on document C06206248, as described below.

### 3.    May 10, 2016 Emails Discussing Draft Talking Points Authored by State's Bureau of Iranian Affairs

State redacted three May 10, 2016 email threads containing a discussion of draft talking points for use in addressing news stories about the video.  *See* Am. *Vaughn* Index, Entry 10 (citing C06219467; C06219548; C06219550).  According to State, these talking points contain "anticipated questions and draft answers" originally authored by State's Office of Iranian Affairs

("OIA") for use by State's PA.  *Id.*  As stated earlier, the PA was the office ultimately "responsible for communicating timely and accurate information" to the media.  Stein Decl. ¶ 16.  In the first email thread, an OIA official asked an NSC official to clear a press-guidance document.  *See* C06219548.  The two continued this discussion in the second email thread, in which the NSC official suggested edits.  C06219550; *see also* 2d Stein Decl. ¶ 7.  In the third email thread, the OIA official consulted with Harf for suggested additions to the talking points.  *See* C06219467.

The Court finds that the redacted discussion in these three email threads is predecisional and deliberative.  The "decision" in this instance is not a press briefing, or how to respond to a particular press inquiry, but rather the development of a set of talking points to address future press inquiries.  This activity is protected by the deliberative process privilege.  *See Citizens for Responsibility & Ethics in Wash. ("CREW") v. DOL*, 478 F. Supp. 2d 77, 83 (D.D.C. 2007) (privilege applies to emails discussing an agency's "potential response" to two news articles).  State asserts that the redacted discussion is deliberative because the withheld material does not include "directives flowing from a superior to a subordinate in his or her chain of command."  2d Stein Decl. ¶ 7.  The unredacted portions of the documents support this claim—they show a back-and-forth discussion about how to revise these talking points.  Also, the withheld material is predecisional in that there is no indication that the talking points were ultimately finalized, or even used.  Thus, the Court concludes that the redacted material in these three email threads is covered by the deliberative process privilege.

### 4.    Draft Talking Points for State's Briefings on May 10 and May 11, 2016 Authored by State's Bureau of Near Eastern Affairs

State redacted two sets of draft talking points, each containing "anticipated questions on a variety of topics and proposed responses," prepared by the Bureau of Near Eastern Affairs

("NEA") for the PA to use in press briefings on May 10 and May 11, 2016. Am. *Vaughn* Index,

Entry 8 (citing C06219271; C06219312). The specific topics for the briefing, as shown in the

unredacted portion of the talking points, included: "Fox JCPOA Glitch Video," "Hekmati lawsuit

against Iran," and "Secretary Travel to Europe Bank Meeting." *See* C06219271; C06219312.

Again, as State asserts, the PA was "responsible for communicating timely and accurate

information" to the media. Stein Decl. ¶ 16. The redacted talking points here are predecisional,

in that they were prepared "in advance of" the press briefings. Am. *Vaughn* Index, Entry 8.

They are also deliberative because they represent NEA's press-related recommendations to the

PA, which makes the "final decision on [these] communications to the press." *Id.* Thus, the

Court concludes that the deliberative process privilege applies to the redacted portions of these

two documents.

### 5. Draft List of Issues and Emails Preparing for State's May 11, 2016 Briefing

State redacted a draft list of issues for which Trudeau sought advice in preparation for a

May 11, 2016 daily press briefing, as well as a subsequent email thread discussing draft talking

points for the briefing. *See* Am. *Vaughn* Index, Entry 9 (citing C06219322; C06219456). The

thread begins with an unredacted email from a State official, sent at 7:02 a.m. on May 11, 2016,

which stated that Trudeau would handle the briefing at 2:00 p.m. *See* C06219322. The email

requested press guidance from various State components, and attached a "DRAFT Tasking List."

*Id.* In a redacted follow-up email addressed to Trudeau and sent at 12:43 p.m. that same day, an

OIA official stated that she had "underlined the lines that most directly respond to your two

inquiries," and attached a press guidance document. *Id.*

Although the parties did not provide a copy of the redacted draft list of issues to the

Court, State asserts that this list contains "topics on which PA was seeking talking points" for the

May 11, 2016 briefing. Am. *Vaughn* Index, Entry 9. Such a document is clearly deliberative and predecisional. With respect to the email thread, State asserts, it does not contain "directives flowing from a superior to a subordinate." 2d Stein Decl. ¶ 7. Indeed, the email is sent to Trudeau, who is responsible for giving the May 11, 2016 briefing, from an employee of another State component. *See* C06219322. The email was also sent more than an hour before the actual briefing and, according to State, was redacted for "information about obtaining clearance on the draft talking points." Am. *Vaughn* Index, Entry 9. This is enough context for the Court to conclude that redacted material in the thread is both predecisional and deliberative. Thus, the Court concludes that this material is covered by the deliberative process privilege.

**6.      May 10, 2016 Email Discussing Press Accounts of the Edited Video**

State redacted a May 10, 2016 email thread in which PA officials discuss a news report about the edited video. *See* Am. *Vaughn* Index, Entry 1 (citing C06189797). State asserts that the withheld material is "pre-decisional and deliberative with respect to the Department's determination of what happened to the daily press briefing video on December 2, 2013." *Id.* Specifically, the information includes "the speculation and opinions of Department employees responsible for audiovisual production." 2d Stein Decl. ¶ 9. The Court concludes that on the record here, State has not shown that the deliberative process privilege applies to this material, because it has not alleged that it was part of a process through which an agency decision or policy was formulated. Indeed, factual material severable from policy advice is not typically covered by the deliberative process privilege. *Cf. Paisley v. CIA*, 712 F.2d 686, 699 (D.C. Cir. 1983) ("[I]n most situations factual summaries prepared for informational purposes will not reveal deliberative processes and hence should be disclosed."), *vacated in part on other grounds*, 724 F.2d 201(D.C. Cir. 1984). And, because the Court was not provided with a copy of this document, it can infer no further details that might be relevant to the potential application of the

privilege.  Thus, before making its privilege determination, the Court will allow State to provide

further context relevant to document C06189797 in the manner described below.

### C.      Segregability

ACLJ has raised the issue of segregability with respect to many of these documents.

Pl.'s Cross-Mot. at 12, 14-15; ECF No. 33 ("Pl.'s Reply") at 5-7.  The Court concludes that, with

respect to material in the 14 documents it determined are covered by the deliberative process

privilege, FOIA's segregability requirement has been satisfied.

Segregability is analyzed using a burden-shifting framework.  "In order to demonstrate

that all reasonably segregable material has been released, the agency must provide a 'detailed

justification' for its non-segregability." *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771,

776 (D.C. Cir. 2002) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242,

251 (D.C. Cir. 1977)).  "However, the agency is not required to provide so much detail that the

exempt material would be effectively disclosed." *Id.*  To make this showing, the agency

typically provides a *Vaughn* index and "a declaration attesting that the agency released all

segregable material." *Judicial Watch, Inc. v. DOJ*, 20 F. Supp. 3d 260, 277 (D.D.C. 2014).

Once this information is provided, the agency is "entitled to a presumption that [it] complied

with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*,

494 F.3d 1106, 1117 (D.C. Cir. 2007).  The plaintiff must then produce a "quantum of evidence"

to rebut this presumption, at which point "the burden lies with the government to demonstrate

that no segregable, nonexempt portions were withheld." *Id.*

The Court concludes that State is entitled to the presumption that it has provided all

reasonably segregable material.  It has provided a *Vaughn* index stating that it "determined that

there is no additional meaningful, non-exempt information that may be reasonably segregated

and released." Am. *Vaughn* Index.  State has also provided a declaration stating that it conducted

a "careful, line-by-line review of each document" and released all segregable information.  Stein

Decl. ¶ 19.

ACLJ asserts a segregability challenge to all the material withheld under the deliberative

process privilege: it argues that "the mere fact that these documents involve discussions about

how to respond to media inquiries and/or include talking points memos provides little support for

withholding segregable factual information."  Pl.'s Reply at 6.  The Court disagrees.

Communications with the media on behalf of government agencies often require a prudent

selection and presentation of factual information.  Disclosing the "factual" material from the

kinds of email discussions and talking points at issue here would in all likelihood reveal the

agency's deliberations about how to present those facts.  *Cf. Elec. Frontier Found. ("EFF") v.

DOJ*, 890 F. Supp. 2d 35, 53 (D.D.C. 2012) (agreeing with government that "employees'

deliberative process of selecting and presenting facts" fell within the deliberative process

privilege).

Aside from its generalized segregability challenge (which the Court rejects), ACLJ's only

specific argument is that the unredacted portions of certain documents suggest that State failed to

reasonably segregate the meaningful, non-exempt information from the redacted portions of

those documents.  Pl.'s Cross-Mot. at 12-14 (discussion of *Vaughn* Entries 3 and 6).  For its part,

State has stated that the "factual material in these documents" is "embedded in the opinions and

recommendations on how State should respond to ongoing inquiries," and that "its disclosure

would reveal State's internal deliberations."  ECF No. 31 ("Def.'s Reply") at 17.  Indeed, the

D.C. Circuit has held that, "[i]n some circumstances, even material that could be characterized as

'factual' would so expose the deliberative process that it must be covered by the privilege."

*Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc) (quoting

*Mead Data*, 566 F.2d at 256).  In other words, "purely factual" material can be "so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations."  *EFF*, 890 F. Supp. 2d at 47 (quoting *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)).  State has asserted that such is the case here, *see* Def.'s Reply at 17, and ACLJ has shown any reason why this is not so.

In short, ACLJ has not rebutted the presumption in favor of State on the issue of segregability.  Therefore, the Court concludes that the segregability requirement is satisfied with respect to the 14 documents covered by the deliberative process privilege.

**D.     Presidential Communications Privilege**

"While the deliberative process privilege applies to executive officials generally, the presidential communications privilege applies to the President."  *CREW v. DHS*, 514 F. Supp. 2d 36, 47 (D.D.C. 2007) (citing *In re Sealed Case*, 121 F.3d at 745).  "[T]he Supreme Court first acknowledged a separate privilege for presidential communications [in *United States v. Nixon*, 418 U.S. 683, 708 (1974)]. . . in the context of President Nixon's invocation of the privilege to protect his personal conversations with his chief White House advisers in the Oval Office."  *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1114 (D.C. Cir. 2004).  The D.C. Circuit later extended "the privilege beyond communications directly involving and documents actually viewed by the President, to the communications and documents of the President's immediate White House advisers and their staffs."  *Id.* (discussing *In re Sealed Case*, 121 F.3d at 746-47).  However, the D.C. Circuit has made clear that "there is, in effect, a hierarchy of presidential advisers such that the demands of the privilege become more attenuated the further away the advisers are from the President operationally."  *Id.* at 1115.  Thus, the privilege does not generally "extend to staff outside the White House in executive branch agencies."  *In re Sealed Case*, 121 F.3d at 752.

The privilege is premised on "the need for confidentiality to ensure that presidential decisionmaking is of the highest caliber, informed by honest advice and full knowledge." *In re Sealed Case*, 121 F.3d at 750. Communications "'directly involving' the President . . . are entitled to the privilege, regardless of whether the President solicited them." *Loving v. DOD*, 550 F.3d 32, 40 (D.C. Cir. 2008) (quoting *Judicial Watch*, 365 F.3d at 1114). The privilege also protects "communications authored or solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate." *In re Sealed Case*, 121 F.3d at 752.

"[W]hen a court decides whether the privilege extends to a document or class of documents, it must ask whether application of the privilege is necessary to protect the confidentiality of communications as between the President and his advisers." *Ctr. for Effective Gov't v. Dep't of State*, 7 F. Supp. 3d 16, 25 (D.D.C. 2013). Also, "[t]he presidential communications privilege should never serve as a means of shielding information regarding governmental operations that do not call ultimately for direct decisionmaking by the President." *In re Sealed Case*, 121 F.3d at 752. Finally, unlike the deliberative process privilege, the presidential communications "covers final and post-decisional materials as well as pre-deliberative ones." *Judicial Watch, Inc.*, 365 F.3d at 1114 (quoting *In re Sealed Case*, 121 F.3d at 745).

The State Department has asserted this privilege with respect to a single document, C06190112, that reflects communications involving NSC official Bernadette Meehan, Rhodes, Psaki, and Harf about press guidance and strategy related to Iran. *See* Am. *Vaughn* Index, Entry 2; 2d. Stein Decl. ¶ 4.

### 1.    Invocation of the Privilege

As a threshold matter, ACLJ argues that State could not have properly withheld material under Exemption 5's presidential communications privilege because only the President may invoke the privilege. Pl.'s Cross-Mot. at 17. The President has not invoked the privilege here. Instead, the Director of State's Office of Information Programs and Services submitted two declarations explaining that the document falls within the scope of the privilege. Stein 2d Decl. ¶¶ 10-11; Stein Decl. ¶¶ 1, 18. However, "[e]ven assuming that the President must personally invoke the presidential communications privilege in civil discovery," the Court concludes that this requirement is not "imported into the far different context of FOIA." *Lardner v. DOJ*, No. 03-cv-0180, 2005 WL 758267, at *6 (D.D.C. Mar. 31, 2005). There is "a critical difference between the government's invocation of a privilege in civil discovery and its decision to withhold documents under FOIA." *Id.* at *8. In the FOIA context, "[a]n agency does not *invoke* a privilege against discovery when it withholds a document under one of the exemptions, because there is no discovery to resist." *Id.* (emphasis added). "Instead, the agency simply makes the determination that a statutory provision protects the documents from disclosure, and withholds the documents on that ground." *Id.* Indeed, "[t]here is no indication in the text of FOIA that the decision to withhold documents pursuant to Exemption 5 must be made by the President." *EPIC v. DOJ*, 584 F. Supp. 2d 65, 80 (D.D.C. 2008).

Moreover, ACLJ's argument is "at odds with the established principle that Exemption 5 protects from disclosure documents that 'fall within the ambit of a privilege' such that they would not be 'routinely or normally' disclosed in civil discovery upon a showing of relevance," *Berman v. CIA*, 378 F. Supp. 2d 1209, 1220 (E.D. Cal. 2005) (quoting *Klamath Water*, 532 U.S. at 7), *aff'd*, 501 F.3d 1136 (9th Cir. 2007). This principle suggests that "courts interpreting

Exemption 5 focus on the content or nature of the document, as opposed to the manner in which the exemption is raised in a particular situation." *Id.* (citing *Dow Jones & Co., Inc. v. DOJ*, 917 F.2d 571, 575 (D.C. Cir. 1990)); *see also Lardner*, 2005 WL 758267, at *7 (finding "no reason" why the presidential communications privilege would not primarily "depend[] on the factual content and purpose of the requested document" (quoting *Dow Jones*, 917 F.2d at 575)).

For the reasons stated above, the "presidential communications privilege does not need to be asserted by the President himself" in this case. *EPIC*, 584 F. Supp. 2d at 80; *see also Lardner*, 2005 WL 758267, at *8; *Loving v. DOD*, 496 F. Supp. 2d 101, 108 (D.D.C. 2007), *aff'd*, 550 F.3d 32 (D.C. Cir. 2008); *Berman*, 378 F. Supp. 2d at 1220-21.

In the alternative, ACLJ argues that State has not properly invoked Exemption 5's presidential communications privilege because it "has been upheld only where a high ranking official and/or a party to [the relevant] communications invokes the privilege." Pl.'s Reply at 7 (citing *Lardner*, 2005 WL 758267, and *Ctr. for Effective Gov't*, 7 F. Supp. 3d at 16). However, the only two cases ACLJ cites for this proposition do not suggest that that the privilege turns on the identity of the official invoking the privilege. In fact, in one of them, *Lardner*, the court explicitly stated that an agency does *not* need to invoke a privilege at all to withhold a document under a FOIA exemption; rather, as already discussed above, the agency "simply makes the determination" that it is protected from disclosure. 2005 WL 758267, at *8.

### 2. Application of the Privilege to the December 2013 Email Thread Involving Meehan, Rhodes, Psaki, and Harf

ACLJ also argues that, regardless of whether the presidential communications privilege is properly invoked, the withheld material in document C06190112 does not fall within the scope of the privilege. Pl.'s Cross-Mot. at 20-22. Upon review of a redacted copy of the document, as well as the State Department's *Vaughn* index and affidavits, the Court finds that it is unable to

determine whether the withheld material is covered by the presidential communications privilege.

Document C06190112 is a December 2013 email thread that begins with an exchange between a reporter and Meehan. The reporter asked about an alleged "face-to-face meeting with Iranian officials in Oman in July 2012." C06190112. Meehan "decline[d] to discuss/confirm anything further related to that channel." *Id.* She then forwarded the exchange to Psaki and Harf, and copied Rhodes. *Id.* Meehan's message to the group in her forwarding email was almost entirely redacted. *Id.* Psaki then replied to Meehan by stating, "[h]appy to and we will also work to shut [another person] down." *Id.*

The State Department explains that "[t]he presidential advisors who were involved in these communications advised the President on, among other things, how to present and explain Iran-related policy to the public." Stein 2d Decl. ¶ 11. State further explains that, "[i]n the course of developing advice for the President on matters that concern national security and topical issues related to foreign policy, NSC and White House officials regularly consult subject matter experts in the Department." *Id.* In State's view, "[d]isclosure of the withheld information would reveal the process by which the President receives national security advice from close advisors, and would reveal details about the advice generated in that process." *Id.* According to State's *Vaughn* index, "the withheld information includes information about the subject and timing of a meeting, and the decision reached in that meeting." Am. *Vaughn* Index, Entry 2.

Here, the redacted communication was authored by Meehan, an NSC official who appears to qualify as an immediate White House adviser. However, State's bare-bones description of the contents of the withheld material—that it relates to the timing and subject of a "meeting," *id.*— is insufficient for the Court to determine whether the presidential

communications privilege applies to it.  Although the email thread includes a reporter's inquiry about an alleged "face-to-face meeting" between U.S. and Iranian officials in Oman in July 2012, C06190112, there is no indication that this is the same "meeting" to which State refers. Indeed, as for the meeting State has invoked, it has not described its timing, attendees or even its subject matter.  *See ACLU v. DOJ*, No. 10-cv-123, 2011 WL 10657342, at *10 (D.D.C. Feb. 14, 2011) (privilege covered information related to government meetings "convened or attended by senior members of the President's national security team and briefings provided to them by Executive Branch Officials").  Rather, State asserts in conclusory fashion that disclosure of the withheld material concerning the meeting will "reveal the process by which the President receives national security advice."  Stein 2d Decl. ¶ 11.  But without knowing anything about the meeting at issue, the Court cannot determine whether the withheld material "call[s] ultimately for direct decisionmaking by the President," *CREW*, 592 F. Supp. 2d at 119 (quoting *In re Sealed Case*, 121 F.3d at 752), or whether the decision to withhold the material is "necessary to protect the confidentiality of communications as between the President and his advisers," *Ctr. for Effective Gov't*, 7 F. Supp. 3d at 25.  Thus, before making its privilege determination, the Court will allow State to provide additional information concerning the material redacted from document C06190112 in the manner described below.

## IV.    Revised *Vaughn* Index and Additional Declarations

For the reasons already stated, with respect to documents C06206248, C06189797, and C06190112, the Court concludes that the State Department's *Vaughn* index and two affidavits "fail[] to provide a sufficiently detailed explanation to enable the [Court] to make a de novo determination of the agency's claims of exemption."  *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998).  As a result, the Court is left with "several options, including inspecting the documents *in camera*, requesting further affidavits, or allowing the plaintiff discovery."  *Id.*

At this juncture, the Court will direct State to submit a revised *Vaughn* index and, if necessary or helpful, additional declarations that address the deficiencies identified in this opinion with respect to documents C06206248, C06189797, and C06190112. *See EFF v. DOJ*, 826 F. Supp. 2d 157, 175 (D.D.C. 2011) (directing agency to submit revised *Vaughn* submissions where initial submissions were inadequate). The Court will determine the applicability of Exemption 5 to those documents, and whether the State Department has fulfilled its duty to provide all factual information that is reasonably segregable, when the parties have submitted renewed motions on the timeline set forth below.

## V.        Conclusion and Order

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** State's motion for summary judgment, ECF No. 26, and **DENIES** ACLJ's cross-motion for summary judgment, ECF No. 27. The Court grants summary judgment for State, and denies summary judgment for ACLJ, with respect to the two documents redacted for the attorney-client privilege and 14 documents redacted for the deliberative process privilege, all identified above. The motions are otherwise **DENIED** without prejudice. The State Department shall submit a revised *Vaughn* submission and/or additional affidavits supporting its redactions to documents C06206248, C06189797, and C06190112, and a renewed motion for summary judgment, by **October 22, 2018**. ACLJ shall file its opposition to State's renewed motion and its renewed cross-motion for summary judgment by **November 19, 2018**. State shall file its opposition to

ACLJ's renewed cross-motion and reply in support of its renewed motion by **December 17, 2018.** ACLJ shall file its reply in support of its renewed cross-motion by **December 31, 2018.**

    **SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 10, 2018